*U.S. Bank Nat'l Ass'n v. Lisman*, No. 373-10-14 Bncv (Valente, J., May 13, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Bennington Unit | CIVIL DIVISION<br>Docket No. 373-10-14 Bncv |
| U.S. Bank National Association,<br>    Plaintiff<br><br>v.<br><br>Marilyn S. Lisman,<br>    Defendant | DECISION ON MOTION |

## Opinion

This is a foreclosure case. It has gone through the mediation process and the parties have failed to reach a mutually agreeable resolution. Defendant borrower objects to the mediator's conclusion that Plaintiff, the mortgage servicer, participated in mediation in good faith. Defendant moves the court to order a new mediation in which Plaintiff would be required to re-determine Defendant's eligibility for a loan modification using specific criteria, including a 2% interest rate and a forty (40) year loan term. Defendant also seeks attorney's fees. Plaintiff asserts that it did act in good faith and opposes Defendant's requests.

On March 31, 2016 a hearing was held on the motion. Defendant filed a supplemental response on April 18, 2016.

For the following reasons, the court GRANTS IN PART and DENIES IN PART Defendant's motion.

## Background

On October 20, 2014, Plaintiff filed this foreclosure action. On December 24, 2014, the case was referred to mediation.

On February 27, 2015, Defendant sent a packet of financial information to Plaintiff so that Plaintiff could determine whether she was eligible for a loan modification.

On July 16, 2015, Plaintiff issued a letter informing Defendant that it had found her ineligible for a modification. The letter explained that based on the net present value (NPV) calculation (which used certain inputs listed in an attachment to the letter) her loan could not be modified under either Tier 1 or Tier 2 of the Home Affordable Modification Program (HAMP). The reason the loan could not be modified was because the modified monthly mortgage payment, along with her tax and insurance obligations, would have exceeded 31% of her monthly income (referred to as the affordable payment threshold). The letter did not explicitly mention the applicable Pooling and

Servicing Agreement (PSA), which Defendant later learned prohibited Plaintiff from lowering her interest rate to 2% and extending the loan term to forty (40) years. Line 40 of the attachment said that the applicable interest rate was 6.375%, which was the original note interest rate. Also, the attachment included line 43 saying, "Investor Override of Tier 2 Modification – YES." Plaintiff did not seek a waiver of the PSA terms from the investor at this time. According to the letter, Defendant had thirty (30) days to appeal the decision.

By August 12, 2015, Defendant had not received the July 16 letter. On that day, she contacted Plaintiff. Plaintiff sent her the letter, but refused to extend the appeal deadline. Defendant was unable to obtain a new property appraisal to submit with her appeal.

On October 9, 2015, Plaintiff informed Defendant that pursuant to the PSA, her interest rate and term could not be modified. In the PSA, it listed nine loan servicing groups that were "designated." All other loans were "non-designated." Only "designated" loans were eligible for a reduction in the interest rate to 2% and an extension of the loan term to forty (40) years.

On November 18, 2015, the mediation session took place. During the mediation session, Defendant requested a waiver of the PSA restrictions from the mortgage investor. Contact was made, but the investor replied that the servicer had to comply with the governing servicing documents, i.e. the PSA.

On November 30, 2015, the mediator filed a report indicating that both parties had participated in good faith and that a loan modification was not offered.

Defendant objects to the mediator's conclusion. Defendant argues that Plaintiff did not act in good faith because Plaintiff knew from the time Defendant sent her income information in February 2015 that her loan was in the "non-designated" category. Therefore, the Plaintiff also knew that she was not eligible to have the term and interest rate modified, which was the only way the parties could keep the modified monthly payment under the 31% affordable payment threshold.

Defendant argues the July 2015 letter was misleading because it referred to HAMP and not the Pooling and Servicing Agreement (PSA). This reference to HAMP led her to believe that she could have her term and interest rate modified. It was only in October 2015 that Plaintiff disclosed the PSA. Defendant asserts that Plaintiff's failure to timely notify her of the PSA restrictions regarding the interest rate and loan term caused her to spend significant attorney's fees pursuing mediation efforts that Plaintiff should have known would be futile as early as February 2015.

Additionally, Defendant asserts that Plaintiff's computation of her eligibility for either HAMP tier modification in connection with the July 2015 letter was flawed. Defendant points to § 6.5 of the Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages (MHAP Handbook) issued by the U.S. Department of the Treasury. She contends that pursuant to § 6.5, Plaintiff should have sought a waiver of the PSA restrictions from the investor prior to calculating her eligibility for a HAMP modification.

Defendant moves this court to order a new mediation session in which Plaintiff would be required to determine Defendant's eligibility for a modification under HAMP, including modifications to the interest rate, lowering it to 2%, and extending the term to forty (40) years. Defendant also requests that the court award it attorney's fees from February 27, 2015, to the present, which were $13,747.00 as of April 13, 2016.

Plaintiff responds that it did act in good faith throughout the process. It notes that Defendant's loan could be modified, just not as to the interest rate and loan term factors. It claims it did not know that a modification using other factors would fail to produce a mortgage payment below the affordable payment threshold until it had confirmed Defendant's income and input all the variables into its formula, which occurred in connection with the July 2015 letter.

Plaintiff also argues that it did not mislead Defendant as to the inability to modify the interest rate and loan term for two reasons. First, because lines 40 and 43 of the attachment to the July 2015 letter indicated that the PSA prevented this. Second, it sent a copy of the PSA to Defendant's counsel on October 9, 2015, with specific references to the relevant sections of the PSA. Defendant should have been aware by that point that she had a "non-designated" loan because the definition of "designated" listed nine loan servicing groups, which did not include her servicer group and the "non-designated" definition explained that any mortgage not "designated" was "non-designated." This information was sent over a month before the mediation session took place.

Plaintiff notes that it subsequently recalculated the feasibility of a modified mortgage using remaining loan balance ($340,247.68) instead of either the appraised property value ($500,000.00) or the Broker's Price Opinion value ($390,000.00). The formula used the constraints of the PSA and resulted in a modified payment that would have exceeded Defendant's affordable payment threshold.

Plaintiff argues the foreclosure mediation statute does not require a plaintiff to produce any pooling and servicing restrictions at the inception of the mediation process. Plaintiff interprets the word "during" as used in 12 V.S.A. § 4633(a) to mean that it is only required to disclose the PSA at the mediation session, not at the outset of the mediation process.[1] It also states that the investor did reject its request for a waiver.

Plaintiff further contends that it was not required to seek the waiver at the inception of the review process under § 6.5 of the MHAP Handbook because the handbook uses the word "should" not "must." It argues that the language in § 6.5 is vague as to the time when it must seek the waiver from the investor because § 6.5 refers to restrictions making modification "unfeasible," and modifications are only determined to be unfeasible at the end of the process.

Plaintiff claims that even if the debt was amortized over forty (40) years at 2% interest, the resultant payment figure would exceed the affordable payment threshold. Defendant's monthly income was $7,810.00. Thus, the affordable payment threshold (31%) would be $2,421.10. This figure includes her tax and insurance obligations as well as the principal and interest mortgage payments. Plaintiff believes Defendant's monthly tax and insurance obligations were $1,289.98

---

[1] 12 V.S.A. § 4633(a) begins with the words "[d]uring all mediations."

3

during the mediation process. It was this high, according to Plaintiff, because Defendant had sought extensions in filing her taxes and homestead exemption. Subtracting $1,289.98 from $2,421.10 results in a maximum possible mortgage payment of $1,131.12. Plaintiff explained that if the $486,468.00 debt was amortized over forty (40) years at 2% monthly interest, the needed monthly principal and interest payment would have been $1,473.15, or $342.03 over the threshold. Thus, Plaintiff attributes its inability to offer a modification not to its refusal to modify the interest rate and loan term, but to Defendant's tax and insurance obligations and the size of her debt.

Finally, Plaintiff argues that caselaw does not support the position of forcing a servicer to modify a loan; HAMP only requires the servicers to consider eligible loans for modification. It cites several federal district court decisions holding that the applicable statute does not require servicers to modify loans; it only requires the Secretary of the Treasury to encourage services to modify loans. See e.g. *Hart v. Countrywide Home Loans*, *Inc.*, 735 F.Supp.2d 741, 747-48 (E.D. Mich. 2010).

Following an invitation by the court after oral argument, Defendant submitted a response to Plaintiff's reference to *Hart* and the other decisions. She contends that the decisions cited by Defendant are distinguishable because they address the issue of the borrower's lack of standing to sue after mediation has been completed, not the extent to which a court can issue orders that ensure the borrower is treated fairly within the mediation. She also suggests that Plaintiff's interpretation of the case, that it could deny a modified loan after determining that a borrower is eligible for a modified loan, would result in a mediator finding that the servicer did not mediate in good faith.

Defendant further noted that she had requested that the November mediation session be postponed until after she had submitted her federal tax returns and her prebate was determined. Defendant anticipated this would lead to a reduced tax bill. She also expected to obtain less costly homeowners insurance. Both the reduced tax and insurance bills would have had an impact on Plaintiff's determination of whether she could have met the affordable payment threshold under a 40 year extended term at 2% interest as explained above.

Analysis

Defendant urges the court to determine that Plaintiff did not comply with its obligation to engage in the mediation process in good faith because: (1) it failed to timely disclose the PSA's prohibition of modifying the interest rate and loan term; (2) it failed to give her sufficient time to appeal its July 2015 decision; (3) it failed to seek a waiver from the investor in or before July 2015; and (4) its explanation as to why her loan does not qualify as a "designated" loan during the mediation session was inadequate. She seeks attorney's fees to date and a re-referral to mediation with a specific order that the Defendant's eligibility for a mortgage be reviewed at a specific rate and with a specific duration.

The statutes controlling the inquiry before the court are 12 V.S.A. §§ 4633, 4635.

4

The law requires, in part, that "[d]uring all mediations":

> (3) The mortgagee shall produce for the mortgagor and mediator:
>
>> (A) if a modification or other agreement is not offered, an explanation why the mortgagor was not offered a modification or other agreement; and
>>
>> (B) for any applicable government loss mitigation program, the criteria for the program and the inputs and calculations used in determining the homeowner's eligibility for a modification or other program.
>
> (4) Where the mortgagee claims that a pooling and servicing or other similar agreement prohibits modification, the mortgagee shall produce a copy of the agreement.

12 V.S.A. § 4633(a)(3), (4).

Moreover, the mortgagee is under an obligation to "produce the information required by subsections (a) … of this section in a timely manner so as to permit the mediation process to function effectively." 12 V.S.A. § 4633(c).

After receiving the mediator's report, the court is required to make a determination of whether the servicer complied with its obligations under § 4633(a). 12 V.S.A. § 4635(a). If the court determines that the servicer was noncompliant, it may impose appropriate sanctions, including reasonable attorney's fees. 12 V.S.A. § 4635(b).

Defendant has set forth four arguments for the court to consider in its determination of whether the servicer complied with its obligations under the statute.

*First*, Defendant contends that Plaintiff should have disclosed the PSA restrictions shortly after receiving her financial information in February 2015, rather than at the mediation session in November 2015.

The language "[d]uring all mediations" in § 4633(a) refers to the mediation process as a whole, not the mediation session itself. The Plaintiff was required to disclose the PSA prior to the mediation session held on November 18, 2015.

Given that finding, the question turns to whether the PSA restriction should have been disclosed earlier than it was. Pursuant to § 4633(b)(2), the parties should have held a mediation preconference within 45 days of the mediator being appointed on December 24, 2014. At that conference the parties could have – and arguably from Defendant's perspective should have – identified the PSA. The relevant PSA provisions were not disclosed by Plaintiff until October 9, 2015. This was over a month before the mediation session occurred. Yet, this was approximately three months after the July 2015 letter which relied on calculations based on the PSA. The PSA became relevant at that time of the July letter and a timely disclosure of the PSA should have occurred in conjunction with that letter. See 12 V.S.A. § 4633(c).

5

*Second*, Defendant raises the issue of the Plaintiff's timeline for the Defendant to appeal the July 2015 letter.

The thirty day timeline in the July letter from Plaintiff to Defendant was a unilateral deadline imposed by the Plaintiff.[2] The undisputed facts in this case are that Defendant did not receive the letter until the deadline had nearly expired and Plaintiff refused to extend the deadline.

A mortgagee's unilateral imposition of a deadline and subsequent refusal to extend that deadline when notice was not timely given does not permit the process to function effectively. See 12 V.S.A. § 4633(c).

*Third*, Defendant has raised an issue regarding Plaintiff's failure to request a waiver of the PSA restrictions prior to performing the NPV evaluation on or about July 2015.

It would have been preferable had Plaintiff sought the waiver of the PSA restrictions prior to the mediation session. The court acknowledges that Plaintiff could only determine that a modification would have been unfeasible without waiving the PSA restrictions after it had confirmed the input values. However, after determining that a modification using the existing interest rate and loan term was unfeasible on or about July 2015, Plaintiff could have sought a waiver from the investor prior to sending Defendant the letter. Despite receiving the actual PSA on October 9, 2015 Defendant waited until the mediation session on November 18, 2015 to ask Plaintiff to request the waiver from the investor.

The Plaintiff should have requested the waiver on its own prior to sending the July 2015 letter, therefore the lateness of Defendant's request has no impact on the court's finding that Plaintiff did not comply with its statutory obligations.

The MHAP Handbook § 6.5 states:

> If a servicing agreement … restricts or prohibits a modification step in the standard or alternative modification waterfalls (HAMP Tier 1 or Tier 2) and the servicer partially performs it or skips it, the modification may still qualify for HAMP. If the servicer is subject to restrictions that make it unfeasible to complete the modification waterfall steps, the servicer should identify this prior to performing the NPV evaluation and not perform an NPV evaluation. Servicers must maintain evidence in the loan file documenting the nature of any deviation from taking any sequential modification step in the modification waterfall and the fact that the applicable servicing agreement, investor guideline or law restricted or prohibited fully performing the modification waterfall step. The documentation must show that the servicer made a reasonable effort to seek a waiver from the investor and whether that waiver was approved or denied.

Applying § 6.5 to this case, the PSA prohibited the modification of the interest rate and loan term. The Plaintiff partially performed the PSA. The restrictions regarding the interest rate and loan term made a modification unfeasible because the resulting potential monthly mortgage payment

---

[2] Neither party has cited a statutorily mandated deadline for the appeal of the letter.

was greater than the affordable payment threshold. Thus, rather than performing the NPV evaluation, the results of which were sent to Defendant in the July 2015 letter, Plaintiff was required to make a reasonable effort to seek a waiver from the investor and maintain evidence in the file showing whether that waiver was approved or denied. If the investor approved the waiver, Plaintiff was not required to actually modify those terms or otherwise deviate from the modification waterfall.

While Defendant has not cited TARP or other law indicating that Plaintiff is bound by the Handbook's terms, the relevant section of the Handbook, § 6.5, is persuasive as to what Plaintiff was required to do in order to permit the mediation process to function effectively. Proper attention must be paid to this step in the process because "[t]he HAMP-related 'net present value' calculation (NPV) for purposes of determining eligibility for modification is a critical component of foreclosure mediation." *Wells Fargo Bank, N.A. v. Betit*, No. 408-5-10 Rdcv, 2012 WL 4294091 (Vt. Super. Ct. Aug. 27, 2012) (Teachout, J.). Rather than waiting for a homeowner with far less experience than the servicer to make the request, a servicer should make this request as soon as reasonably feasible. This allows all the parties to determine whether a waiver of these terms would be relevant going into the mediation session. Waiting until the last minute, particularly when the servicer can or should foresee the waiver request being desirable, or even necessary, is not permitting the mediation process to function effectively. Thus, Plaintiff's failure to make reasonable efforts to seek a waiver prior to sending the July 2015 letter is another instance where it inhibited the mediation process from functioning effectively.

*Fourth,* Defendant has raised the issue that Plaintiff's explanation as to why her loan does not qualify as a "designated" loan was inadequate.

Plaintiff refused to provide Defendant with a list of the factors that determine whether a loan is "designated" or "non-designated" under the PSA. Plaintiff provided Defendant with a copy of the PSA more than one month before the mediation session and pointed out the specific relevant provisions in the document. The PSA itself made it clear that there were only nine loan servicing groups that qualified as "designated" and that all other groups were "non-designated." Defendant's loan was not among the nine listed groups; that was the determining factor as to whether the investor's PSA would permit modification of the interest rate and loan term. Defendant had sufficient warning of this.

To the extent that Defendant wanted additional information in order to determine whether the exclusion of her mortgage from that list was improper, Plaintiff was not required to provide that information. This situation is distinguishable from the facts of *Betit*, in which the court awarded attorney's fees to the defendant where the Plaintiff merely provided conclusory statements of position and a website summary of that position rather than the required documents or statutory references. Plaintiff met its obligation to identify the basis of its position that the loan was ineligible for modification by providing the PSA documents on October 9, 2015.

In sum, individually, three of the events cited by Defendant[3] provide a basis for finding that Plaintiff did not comply with its statutory obligations. Cumulatively, those events provide an even stronger basis for this conclusion.

Pursuant to the reasoning set forth above, disclosure required by § 4633(a) did not occur in a timely manner so as to permit the mediation process to function effectively. See § 4633(c). Therefore, Plaintiff did not comply with its obligations under § 4633(a). Having determined that Plaintiff was noncompliant in part, the court may impose appropriate sanctions, including reasonable attorney's fees. 12 V.S.A. § 4635(b).

Defendant seeks sanctions in the form of a court order for a new mediation in which Plaintiff would be required to re-determine her eligibility for a loan modification using specific criteria, including a 2% interest rate and a forty (40) year loan term. Defendant also seeks attorney's fees.

As noted above, Plaintiff has made the calculations with the 2% interest rate and 40 year loan term and concluded that the resultant monthly payment would still be above the affordable payment threshold. Defendant has not shown any facts suggesting that this conclusion is inaccurate. Additionally, while this court may impose appropriate sanctions, it does not conclude that an order to determine eligibility of a loan modification with specific criteria is within the authority of the court. Although not exclusive, § 4635(b) does not include re-ordering mediation with specific criteria to be one of the suggested forms of sanctions. As with Rule 11 sanctions, the court has "the discretion to fashion sanctions to fit the circumstances of specific cases." 5A Fed. Prac. & Proc. Civ. § 1336.3 (3d ed.). The court will not order a new mediation of this matter.

However, sanctions of reasonable attorney's fees are appropriate. See § 4635(b)(2). Plaintiff's actions were noncompliant with its statutory obligations and resulted in Defendant incurring attorney's fees to show the non-compliance. Defendant is therefore awarded attorney's fees in conjunction with showing non-compliance. Fees are awarded from December 2015 through the hearing of this motion and filing of the response in the amount of $8,847.00.

Order

WHEREFORE, for the reasons set forth above, Defendant's Motion Objecting to the Mediator's Conclusions and Request for Relief is GRANTED IN PART and DENIED IN PART. Plaintiff is ORDERED, no later than June 10, 2016, to pay Defendant's attorney's fees in the amount of $8,847.00. The Mediator's Report is otherwise approved and consideration of the foreclosure complaint will proceed as contemplated by V.R.C.P. Rule 80.1.

Electronically signed on May 13, 2016 at 10:31 AM pursuant to V.R.E.F. 7(d).

_____
John W. Valente
Superior Court Judge

---

[3] These events are: the disclosure of the PSA on October 9, 2015, three months after it sent the July 2015 letter; the unilateral imposition of a deadline and subsequent refusal to extend the deadline when notice was not timely given to Defendant; and the failure to seek a waiver of the PSA terms prior to sending the July 2015 letter.